**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**KHALAIRE ALLAH,**

                              **Plaintiff,**

            v.                                                9:13-CV-826
                                                                      (FJS/TWD)

**B. HILTON, Deputy Superintendent Mental
Health, Marcy Correctional Facility; and
DIANE L. VANBUREN, Executive Assistant
Commissioner, Department of Corrections,**

                              **Defendants.**

_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **BARCLAY DAMON LLP**<br>555 East Genesee Street<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **MICHAEL J. SCIOTTI, ESQ.**<br>**ANNELIESE ALIASSO, ESQ.** |
| **OFFICE OF THE NEW YORK<br>STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **KEITH J. STARLIN, AAG**<br>**MELISSA A. LATINO, AAG** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      As part of their final pretrial submissions, Defendants filed a motion *in limine* regarding the question of whether the Second Circuit's decision in *Allah v. Murphy*, 699 F. App'x 41 (2d Cir. 2017) (summary order), obviated the need for trial. After discussing this motion with counsel at the Final Pretrial Conference on December 4, 2019, the Court directed the parties to submit

supplemental briefing on the issue of whether Plaintiff's alleged lack of notice prior to being required to wear an exposer jumpsuit resulted in an atypical and significant hardship. *See* Minute Entry dated December 4, 2019. Plaintiff submitted his supplemental brief on January 28, 2020, *see* Dkt. No. 114; and Defendants submitted their supplemental brief on February 14, 2020, *see* Dkt. No. 115.

## II. DISCUSSION[1]

There is no dispute that a prison inmate "'has the right not to be deprived of a protected liberty interest without due process of law.'" *Thomas v. DeCastro*, No. 14-CV-6409 (KMK), 2019 WL 1428365, *4 (S.D.N.Y. Mar. 29, 2019) (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). "'[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.'" *Id.* (quoting *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation and quotation marks omitted)).

"'[P]rison discipline implicates a liberty interest [only] when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."'" *Id.* (quoting *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))). Furthermore, "[t]he Second Circuit has explained that '[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test.'" *Id.* (quoting *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citation and quotation marks omitted)). However, "[t]he duration of disciplinary confinement . . . is 'not the only factor,' and the Second Circuit has 'explicitly avoided a

---

[1] The Court recognizes the parties' familiarity with the procedural history and facts of this case, and, thus, will not repeat them here.

bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights.'" *Id.* (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). In fact, "'[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of atypical and severe hardship,' and, therefore, courts should consider 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions.'" *Id.* (quotation omitted).

In *Thomas*, the plaintiff alleged that the defendants had violated his rights under the First and Fourteenth Amendments by issuing him false misbehavior reports and subsequently subjecting him to retaliatory disciplinary hearings. *See Thomas*, 2019 WL 1428365, at *1. The court explained that, to make out a due process claim related to his confinement in keeplock and SHU, the plaintiff "must plausibly allege (1) that there was a deprivation of a protected liberty interest and (2) that such deprivation was the result of the procedural defects." *Id.* at *5 (citing *Ortiz*, 380 F.3d at 654). The court found that the plaintiff had not met the first element of his due process claim as to any of the disciplinary actions. Specifically, the court found that, after the first disciplinary report and first hearing, the plaintiff was sentenced to 45 days in keeplock, although he served only 10 days, with the remaining time suspended. *See id.* Following the second report and second hearing, the plaintiff was sentenced to 90 days in keeplock, but served only 30 days, with the remaining time suspended; and following the third report and third hearing, the plaintiff was sentenced to, and served, 60 days in the SHU. *See id.* (citation and footnote omitted). Based on these facts, the court concluded that, "[b]ecause each of Plaintiff's separate segregated confinements was fewer than 101 days, they do not implicate Plaintiff's liberty interest absent a showing that Plaintiff suffered an 'atypical and significant hardship.'" *Id.* (quoting *Palmer*, 364 F.3d at 65).

The court in *Thomas* then went on to find that the plaintiff had failed to show that he had suffered any atypical and significant hardship. *See id.* The sum of the plaintiff's allegations was that, while he was in keeplock or SHU confinement, he was deprived of access to recreation, telephone, packages and commissary. *See id.* (citation omitted). The court noted that, although

> the Second Circuit has declined to "delineate the precise contours of 'normal' SHU confinement . . . it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Ortiz*, 380 F.3d at 655 (citation omitted). Plaintiff makes no allegations that he was kept in keeplock or SHU for longer than the typical period, or that he was denied exercise, adequate showers, or was generally subjected to any conditions that were "more onerous than usual," *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citation omitted), and in fact makes no allegations about the conditions of his keeplock beyond the withholding of privileges as described, *see Branch v. Goord*, No. 05-CV-6495, 2006 WL 2807168, at *4 (S.D.N.Y. Sept. 28, 2006) ("Plaintiff's privileges were withhold during confinement, but lost privileges do not constitute an atypical and significant hardship because they are within the expected parameters of the sentence imposed by a court of law." (citation and quotation marks omitted)).

*Thomas*, 2019 WL 1428365, at *5.

Finally, because the court found that the plaintiff "had not shown that his confinement 'impose[d] [an] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life,'" the court concluded that the plaintiff had "'failed to demonstrate a liberty interest entitling [him] to due process[.]'" *Id.* at *6 (quotation omitted). Therefore, the court granted the defendant's motion to dismiss the plaintiff's due process claim. *See id.*

Like Plaintiff in this case, the plaintiff in *Brown v. Faucher*, No. 3:19-cv-00690 (JAM), 2019 WL 5540983 (D. Conn. Oct. 28, 2019), alleged that "the defendants violated his right to due process under the Fourteenth Amendment by subjecting him to administrative confinement with restrictive

-4-

conditions without proper notice or a hearing." *Id.* at *5. The court explained that "[b]ecause a prisoner's liberty interests are already restricted by incarceration, a prisoner who complains of adverse action without due process must show that the adverse action amounted to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484); (citing *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (*per curiam*)). The court concluded that the conditions that the plaintiff alleged "he endured for roughly one month in administrative segregation [did] not show an 'atypical and significant hardship.'" *Id.* (citations omitted).

In the alternative, the court noted that the plaintiff also alleged, as a basis for his due process claim that he was deprived of a protected liberty interest in violation of his due process rights, that "certain prison regulations established a 'substantive predicate' for his transfer to segregation that gave rise to 'a state created interest[,] which gives the plaintiff a protected liberty interest in remaining free of the hardships and severe conditions of the (SHU).'" *Id.* (quotation omitted). The court interpreted the plaintiff's argument as an allegation that "he acquired a liberty interest in remaining in the general prison population based on . . . internal policies." *Id.* The court rejected this argument, however, because "the Supreme Court in *Sandin* 'rejected the idea that a state's establishment of a specific substantive predicate for restrictive confinement of a prisoner is sufficient to create a protected liberty interest.'" *Id.* (quoting *Sealey*, 197 F.3d at 583 (citing *Sandin*, 515 U.S. at 483-84)). Furthermore, the court noted that the Second Circuit had explained that,

> even where there is allegedly a "state-created liberty interest" as a result of "state statutes or regulations [that] require, in language of an unmistakably mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates," in order for a prisoner's claim to be actionable, the deprivation of "the liberty interest

> must [still] subject the prisoner to atypical and significant hardship . . . in relation to the ordinary incidents of prison life."

*Id.* (quoting *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (internal quotations omitted)).

This Court has already determined that Plaintiff has no liberty interest in being free from wearing the exposer jumpsuit and that, even if he had such an interest, the degree and duration of his having to wear that jumpsuit were not significant to amount to a due process violation. *See* Dkt. No. 65 at 30-31; *see also Allah v. Murphy*, 699 F. App'x 41 (2d Cir. 2017) (summary order) (a case involving the same plaintiff in which the Second Circuit upheld the district court's finding that the plaintiff "did not have a liberty interest in being free from wearing an exposure jumpsuit [and] . . . the exposure jumpsuit did not deprive [the plaintiff] of his basic human needs"). It is, thus, clear that, because Plaintiff did not suffer an atypical and significant hardship as a result of being required to wear an exposer jumpsuit under the circumstances of this case,[2] Plaintiff's was not entitled to any due process, including notice, prior to being so restrained. Therefore, the Court concludes that, to the extent that Plaintiff's remaining Fourteenth Amendment due process claim is based on his failure to receive notice before being required to wear the exposer jumpsuit fails as a matter of law.

### III. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's Fourteenth Amendment due process claim based on a lack of notice

---

[2] Plaintiff was able to participate in out-of-cell activities, including programs and visitations, while wearing the exposer jumpsuit.

prior to being required to wear the exposer jumpsuit **fails as a matter of law** and is, therefore, **DISMISSED**; and the Court further

      **ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: April 20, 2020
      Syracuse, New York

                                              Frederick J. Scullin, Jr.
                                              Senior United States District Judge